IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| EDDIE L. HUNTER, #166961, | * |
| | * |
|     Plaintiff, | * |
| | * |
| vs. | *   CIVIL ACTION 22-00146-JB-B |
| | * |
| CPL. BREINING, *et al.*, | * |
| | * |
|     Defendants. | * |

**REPORT AND RECOMMENDATION**

Plaintiff Eddie L. Hunter, a Baldwin County Correction Center ("Jail") inmate proceeding *pro se* and *in forma pauperis*, filed an action under 42 U.S.C. § 1983. This action has been referred to the undersigned for appropriate action pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. GenLR 72(a)(2)(R). After careful consideration, it is recommended that this action be dismissed without prejudice, prior to service of process, pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and (ii) because Hunter's claims either are frivolous or fail to state a claim upon which relief can be granted.

**I.   Complaint. (Doc. 8).**

The complaint before the Court is Hunter's first amended Complaint (Doc. 8) filed pursuant to the Court's directive following the screening of Hunter's original complaint. (Doc. 7). The Court's screening order advised Hunter to select one of his

multiple, unrelated claims, on which to proceed in this action and to indicate his custody status (e.g., pretrial detainee, convicted felon, etc.). (Doc. 7, PageID.31). The order further advised Hunter of federal civil action pleading requirements and that his amended complaint would replace his prior complaint. (Id.).

In the first amended complaint, Hunter named Sgt. Arnold, an officer for Baldwin County, Alabama, as the only Defendant. (Doc. 8 at 5, PageID.42). Hunter indicates that his claims arose while he was in the Baldwin County Corrections Center awaiting transfer to prison following the revocation of his parole due to his June 29, 2021 arrest for menacing. (Id. at 4, PageID.41).

According to Hunter, while he was at the Correctional Center, on December 7, 2021, Defendant Arnold and some nurses came into Q Block for the purpose of giving him and other inmates another Covid "test." (Id.). Hunter avers that even though it was against his beliefs, he took the first "test," which caused him to become sick. (Id.). Hunter further avers that he later went to the doctor who said that he that did not have to take "it" if he did not have any symptoms. (Id.).

Hunter contends that he informed Defendant Arnold that the doctor told him that he did not need to take the test if he did not have any symptoms and that it was against his beliefs. (Id. at 8, PageID.45). Hunter contends that in response, Defendant

2

Arnold told him that he "was 'full of shit' and threaten[ed]" to place Hunter in a lock-up cell if he did not take the Covid "test." (Id.). He further asserts that when he refused the "test," Defendant Arnold told him to pack his things, which he did, because he was being placed in a lock-up cell. (Id.).

According to Hunter, two hours later, he learned that Defendant Arnold had issued him a disciplinary for disobedience and a false statement at 10:55 a.m. (Id.). The next day, December 8, 2021, at 9:55 a.m., Hunter had a disciplinary hearing, in which he advised the hearing officer that his due process rights would be violated if the hearing was held before twenty-four hours elapsed. (Id.). Despite Hunter's protests, the hearing was held. (Id.). Hunter pled "not guilty" and testified. (Id.). He was found "guilty" and sentenced to a ten-day loss of tablet privileges, which Hunter contends "prevented [him] f[rom] receiving mail, us[ing] the law library, as well as access[ing] health care." (Id. at 8-9, PageID.45-46). Hunter states that because he intended to appeal the verdict, he requested a copy of the disciplinary report from two officials, and that Lieutenant Sanders told him to check the tablet for the report. (Id. at 9, PageID.46). Once Hunter's restriction was over, he again requested a copy of the disciplinary report from Lieutenant Sanders as well as Defendant Arnold. (Id.). He also requested a copy of the

3

disciplinary report from Captain Graves and Lieutenant Sanders, while they were in his Block. (Id.). Captain Graves directed Lieutenant Sanders to give him a copy, which he received two to three days later. (Id.). According to Hunter, he wrote his appeal and tried to give it to Corporal Sanders on January 24, 2021; however, she informed him that the time for an appeal had expired. (Id. at 9-10, PageID.46-47). Five days later, Hunter was transferred to prison. (Id. at 10, PageID.47).

Hunter describes his claim against Defendant Arnold as being for violations of his First, Eighth, and Fourteenth Amendment rights when on December 7, 2021, Defendant Arnold falsely charged him with a disciplinary for disobedience and false statement. (Id. at 5, PageID.42). For relief, Hunter seeks $100,000 and the removal of the disciplinary from his record.

## II. Standards of Review Under 28 U.S.C. § 1915(e)(2)(B).

Because Hunter is proceeding *in forma pauperis*, the Court is reviewing his first amended complaint (Doc. 8) under 28 U.S.C. § 1915(e)(2)(B). Under § 1915(e)(2)(B)(i), a claim may be dismissed as "frivolous where it lacks an arguable basis in law or fact." Neitzke v. Williams, 490 U.S. 319, 325, 109 S.Ct. 1827, 1831-32, 104 L.Ed.2d 338 (1989). A claim is frivolous as a matter of law where, *inter alia*, the defendants are immune from suit, id. at 327, 109 S.Ct. at 1833, or the claim seeks to enforce a right

that clearly does not exist.  Id.

Moreover, a complaint may be dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted.  Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997).  To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations must show plausibility.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557, 127 S.Ct. 1955, 1966, 167 L.Ed.2d 929 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).  That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level" and must be a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'"  Twombly, 550 U.S. at 555, 557, 127 S.Ct. at 1965, 1966 (second brackets in original).  But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id.

When considering a *pro se* litigant's allegations, a court gives them a liberal construction holding them to a more lenient standard than those of an attorney, Tannenbaum v. U.S., 148 F.3d 1262, 1263 (11th Cir. 1998), but "this leniency does not give a

5

court license to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action." Campbell v. Air Jamaica Ltd., 760 F.3d 1165, 1168-69 (11th Cir.) (citation and quotation marks omitted), cert. denied, 574 U.S. 1047 (2014). Furthermore, a court treats as true factual allegations, but it does not treat as true conclusory assertions or a recitation of a cause of action's elements. Iqbal, 566 U.S. at 681, 129 S.Ct. at 1951. In addition, a *pro se* litigant "is subject to the relevant law and rules of court including the Federal Rules of Civil Procedure." Moon v. Newsome, 863 F.2d 835, 837 (11th Cir.), cert. denied, 493 U.S. 863 (1989).

**III. Discussion.**

**A. Fourteenth Amendment.**

Hunter alleges a Fourteenth Amendment violation based on the disciplinaries he received for disobedience and for giving a false statement and because he was falsely charged with the disciplinaries.[1] (Doc. 8 at 5, PageID.42). The Fourteenth Amendment's Due Process Clause protects against deprivations of "life, liberty, or property without due process of law." U.S. Const. amend. XIV. In the prison context where "prisoners have have already been deprived of their liberty in the ordinary sense

---

[1] Hunter's use of the word "perjury" (Doc. 8 at 5, PageID.42) is being included by the Court in connection with his claim for being falsely charged with disciplinaries.

of the term[,]" two situations may present themselves where a prisoner may be further deprived of his liberty and due process. Bass v. Perrin, 170 F.3d 1312, 1318 (11th Cir. 1999). "The first is when a change in a prisoner's conditions of confinement is so severe that it essentially exceeds the sentence imposed by the court[,]" such as being transferred to a mental hospital. Id. (citing Sandin v. Conner, 515 U.S. 472, 484, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995)). "The second is when the state has consistently given a certain benefit to prisoners . . . , and the deprivation of that benefit 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life[,]'" such as the deprivation of good-time credits. Id. (quoting Sandin, 515 U.S. at 484, 115 S.Ct. at 2300). See Wilkinson v. Austin, 545 U.S. 209, 221, 125 S.Ct. 2384, 2393, 162 L.Ed.2d 174 (2005)( "A liberty interest may arise from the Constitution itself. . . or it may arise from an expectation or interest created by state laws or policies. . . .").

In Sandin v. Conner, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), the Supreme Court examined the sources of liberty interests associated with disciplinary proceedings. The Court held that the Due Process Clause itself does not have a liberty interest entitling an inmate to due process protections established by Wolff v. McDonnell, 418 U.S. 539 (1974). Id. at

7

487, 115 S.Ct. at 2302. The Court, however, recognized that States may create liberty interests protected by the Due Process Clause and that to determine if a liberty interest existed, it would examine the nature of the deprivation and whether the loss was sufficiently grievous. Id. at 480-84, 115 S.Ct. at 2298-3000. The Court held that "[t]hese interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, . . . , nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484, 115 S.Ct. at 3000.

In Sandin, the Court found that the prisoner's thirty-day sentence in disciplinary segregation was not a dramatic departure from his criminal sentence and was not an "atypical, significant deprivation in which a State might conceivably create a liberty interest." Id. at 476, 485-86, 115 S.Ct. at 2296, 2301. That is, the Court determined that the prisoner's disciplinary sentence did not work a major disruption in his environment. Id. at 485-86, 115 S.Ct. at 2301. The conditions in disciplinary segregation were found to mirror the conditions in administrative segregation and protective custody with minor exceptions. Id. at 486, 115 S.Ct. at 2301. And the inmates in general population were observed by the Court as having significant amounts of lockdown time as

8

well. Id. The Court also found that the fact that the misconduct disciplinary would be on the prisoner's record was too attenuated to invoke the Due Process Clause's procedural guarantees. Id. at 487, 115 S.Ct. 2302. Thus, the Court held that the prisoner did not have a protected liberty interest entitling him to due-process protections as his thirty-day disciplinary-segregation sentence was within the range of discipline normally expected for a prisoner serving a criminal sentence of thirty years to life. Id.; see Smith v. Deemer, 641 F. App'x. 865, 868 (11th Cir. 2016) (to find a liberty interest, the atypical and significant hardship must exist for a significant length of time). Compare Al-Amin v. Donald, 165 F. App'x 733, 739 (11th Cir. 2006) (finding thirty months' confinement to administrative segregation was not an atypical and significant hardship that gave rise to a liberty interest); Lekas v. Briley, 405 F.3d 602, 611 (7th Cir. 2005) (finding the ninety-day confinement to disciplinary segregation was not an atypical and significant hardship); Morefield v. Smith, 404 F. App'x 443, 446 (11th Cir. 2010) (finding a four-year confinement in administrative segregation, although lengthy, did not create a liberty interest considering that the conditions of confinement were similar to those in the general population), with Williams v. Fountain, 77 F.3d 372, 374 n.3 (11th Cir.) (one year in solitary confinement resulted in a deprivation of a liberty

9

interest), cert. denied, 519 U.S. 952 (1996); Magluta v. Samples, 375 F.3d 1269, 1282 (11th Cir. 2004) (holding five hundred days in solitary confinement under harsh conditions was an atypical and significant hardship to which due process attached).

Likewise, the withdrawal of incentives or privileges has been found not to implicate liberty interests.  McKune v. Lile, 536 U.S. 24, 39-40, 122 S.Ct. 2017, 2028, 153 L.Ed.2d 47 (2002) (an inmate's loss of access to his personal television, prison organizations, gym area, canteen, and other privileges did not implicate a liberty interest); Hewitt v. Helms, 459 U.S. 460, 466-70 & n.4, 103 S.Ct. 864, 869-70 & n.4, 74 L.Ed.2d 675 (1983) (finding that no interest arising from the Due Process Clause itself was impacted when an inmate was moved to more restrictive quarters (administrative segregation), which caused a denial of access to vocational, educational, recreational, and rehabilitative programs), overruled on other grounds by Sandin v. Conner, 515 U.S. 472 (1995); Charriez v. Sec'y, Fla. Dep't of Corrs., 596 F. App'x 890, 894 (11th Cir. 2015)(finding that a one-year loss of visitation privileges did not implicate a state-created liberty interest as no right to unfettered visitation exists); Walker v. Loman, 2006 WL 3327663, at *1, *3 (M.D. Ala. 2006) (unpublished) (holding the ninety-day loss of store, telephone, and visitation privileges, recommended custody

increase, and referral for possible free-world prosecution did not result in the deprivation of a liberty interest). In addition, Alabama state courts have determined a prisoner does not have a state-created liberty interest in store, telephone and visitation privileges, Dumas v. State, 675 So.2d 87, 88 (Ala. Crim. App. 1995), or in being required to perform extra work. Summerford v. State, 466 So.2d 182, 185 (Ala. Crim. App. 1985).

To determine if Hunter has a liberty interest, the nature of the deprivation must be examined. Hunter represented that his disciplinary sentence was a ten-day loss "of his tablet privileges, which prevented [him] from receiving mail, use of the law library as well as access to health care." (Doc. 8 at 9, PageID.46). He also asserted that the tablet loss contributed to the untimely filing of his disciplinary appeal. (Id.). Hunter does not indicate if he suffered losses connected to his mail, the law library, and his health care during the ten days.[2] Additionally, Hunter's amended complaint is devoid of any allegations concerning other prisoners' disciplinary sentences or access to the tablet in lock-up or in general population or his access to the tablet in general population and in lock-up with no disciplinary sentence.

---

[2] If Hunter sustained an injury of constitutional magnitude regarding his mail, health care, and law library access due to lack of access to the tablet, he may pursue a remedy for any such injury in a separate § 1983 action.

That is, no baseline can be gleaned from the allegations in the amended complaint that show Hunter suffered an "atypical and significant hardship." See Howell v. Hall, 2017 WL 939016, at *3 (S.D. Ga. 2017)(unpublished)(finding that restricted access to a tablet connected a kiosk machine did not imposed an atypical and significant hardship "[e]Ven if Plaintiff had provided factual allegations concerning the conditions of confinement in the general population or other types of segregated confinement at TSP"), adopted and dismissed for failure to state a claim, 2017 WL 937969 (S.D. Ga), appeal dismissed as frivolous, 2017 WL 5078021 (11th Cir. 2017).

Hunter's alleged deprivation does not reflect "an atypical and significant hardship on [him] in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484, 115 S.Ct. at 2300.  This is because courts have not found that confinement to disciplinary segregation for periods of time greater than ten days to be a liberty interest to which due process attaches.  And it stands to reason that confinement to disciplinary or administrative segregation is a greater loss than being unable to access the tablet for ten days.  Thus, Hunter's loss cannot be said to be an atypical, significant hardship in comparison to other aspects of incarceration, or a dramatic departure from his conditions of confinement.

Furthermore, the result of Hunter being unable to timely file an appeal of the disciplinary decision because he had no access to the tablet does not impact upon a liberty interest.  The Eleventh Circuit has held that prisoners have no constitutional right to an appeal from a disciplinary proceeding.  Moulds v. Bullard, 345 F. App'x 387, 389 n.1 (11th Cir. 2009).  Therefore, Hunter's claim for being unable to timely file an appeal of his disciplinary conviction is frivolous.

Turning to Hunter's specific allegation that twenty-four hours had not elapsed between him being charged and his disciplinary hearing, he has not stated a claim.  The procedural due process required for disciplinary hearings involving a deprivation of a liberty interests is outlined in Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), and in Superintendent v. Hill, 472 U.S. 445, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985).  See O'Bryant v. Finch, 637 F.3d 1207, 1213 (11th Cir.), cert. denied, 568 U.S. 949 (2012).  The Wolff and Hill decisions do not require a twenty-four-hour period.  See Id. at 1214-15.

Moreover, as noted supra, the undersigned has determined that Hunter was not deprived of a liberty interest.  Consequently, Hunter is not entitled to receive due process as outlined in the Wolff and Hill decisions.  When no deprivation of a liberty

13

interest occurs, the omission of due process or one of its elements cannot serve as a basis for a constitutional violation in a § 1983 action. See Roller v. Holloway, 2023 WL 142396, at *3 (11th Cir. Jan. 10, 2023).

Along with his claim that Defendant Arnold wrote him disciplinaries for disobedience and a false statement, Hunter alleges that he was falsely charged. (Doc. 8 at 5, PageID.420). However, Hunter does have not have a constitutionally protected right not to be "falsely or wrongly accused" of a disciplinary infraction. Freeman v. Rideout, 808 F.2d 949, 951 (7th Cir.), cert. denied, 485 U.S. 982 (1988); see Watson v. Turner, 2020 WL 4643478, at *7 (N.D. Ala. 2020) (unpublished); Pierce v. Carson, 2014 WL 5643336, at *9 (M.D. Ala. 2014) (unpublished). Rather, the right a prisoner possesses is not to be denied a liberty interest without due process. Freeman, 808 F.2d at 951; Bass v. Perrin, 170 F.3d 1312, 1318 (11th Cir. 1999). As discussed above, Hunter's allegations do not involve a liberty interest; thus, his claim for being falsely charged is frivolous.

**B. Eighth Amendment.**

Hunter also contends that his rights under the Eighth Amendment have been violated. The Eighth Amendment requires that "[p]rison officials . . . provide humane conditions of confinement; [they] must ensure that inmates receive adequate food, clothing,

shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates[,]" and to "protect prisoners from violence at the hands of other prisoners." Moulds, 345 F. App'x at 391. Hunter's allegations are not consistent with a violation of the Eighth Amendment's requirements.

The pleading standards for stating a claim for a violation of the Eighth Amendment incorporate the Eighth Amendment's prohibition of "cruel and unusual punishments [being] inflicted." U.S. Const. amend VIII. In the context of a non-violent situation, such as in Hunter's first amended complaint, a claim for unconstitutional living conditions must show "[a] prison official's deliberate indifference to a substantial risk of serious harm to an inmate." Farmer v. Brennan, 511 U.S. 825, 828, 114 S.Ct. 1970, 1974, 128 L.Ed.2d 811 (1994). And a claim for unconstitutional medical care must show a deliberate indifference to a serious medical need. Estelle v. Gamble, 429 U.S. 97, 104-05, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). Hunter's allegations do not reflect a deliberate indifference on Defendant Arnold's part, nor do they convey that Hunter's temporary restriction is a punishment that is "cruel and unusual." Moreover, Hunter's allegations are not consistent with claims for Eighth Amendment violations based on conditions of confinement or medical treatment. Therefore, Hunter has failed to state a plausible claim

for a violation of the Eighth Amendment.

### C. First Amendment.

Additionally, Hunter contends that his First Amendment rights were violated. U.S. Const. amend I ("Congress shall make no law respecting an establishment of religion or prohibiting the free exercise thereof . . . ."). Hunter does not specify which allegations form the basis for this alleged violation but rather relies on the Court to discern this claim from his allegations. Based on the Court's review of Hunter's allegations, the allegations that taking the Covid "test" was against his beliefs may align with a First Amendment free-exercise claim. (Doc. 8 at 4, 8, PageID.31, 45). However, Hunter merely alleges that he took the first Covid "test" even though it was against his "beliefs." His "beliefs" are not described in the amended complaint, and they could in fact based on something other than religion. Even assuming his beliefs arise from his religion, he has not identified his religion or the tenets of his religion that impact the taking of the Covid "test." Nor do his allegations reveal that the taking of the "test" was unreasonable.

The law governing a First Amendment free-exercise claim provides:

> Though the government may not dictate what an individual can believe, it may enact neutral and generally applicable laws that incidentally burden religious conduct and

16

> exercise. See Emp. Div., Dep't of Hum. Res. of Oregon v. Smith, 494 U.S. 872, 878, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990). So long as the restriction or prohibition of religious conduct or exercise is not "the object" of the regulation "but merely the incidental effect of a generally applicable and otherwise valid provision, the First Amendment has not been offended." Id. In the prison setting, a rule, regulation, or policy restricting the exercise of religion is valid "if it is reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). See also O'Lone v. Estate of Shabazz, 482 U.S. 342, 349, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987) (applying the Turner standard to a free exercise of religion claim); Hakim v. Hicks, 223 F.3d 1244, 1247 (11th Cir. 2000) (same).

Dorman v. Aronofsky, 36 F.4th 1306, 1312-13 (11th Cir. 2022).

Considering the requirements for a free-exercise claim, the undersigned concludes that Hunter has not stated a plausible claim. Therefore, Hunter's claim for violation of his First Amendment rights is due to be dismissed.

## IV. Conclusion.

Based upon the foregoing reasons, it is recommended that this action be dismissed without prejudice, prior to service of process, pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and (ii) because Plaintiff's claims are either frivolous or fail to state a claim upon which relief may be granted.

### NOTICE OF RIGHT TO FILE OBJECTIONS

17

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. See 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D. Ala. Gen.LR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection however, the court may review on appeal for plain error if necessary, in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the **23rd** day of **January, 2023.**


**/s/ SONJA F. BIVINS**
**UNITED STATES MAGISTRATE JUDGE**